RAMEY *v.* MICHIGAN PUBLIC SERVICE COMMISSION.

BARNHARDT *v.* SAME.

1. OFFICERS—CIVIL SERVICE—RULES AND REGULATIONS—LEAVE WITH PAY.

Civil service commission rule providing for annual leave with pay for all employees in the classified service and that any employee who was separated from the State service, with leave untaken, would be compensated for the unused portion of his leave allowance was within the general policy of the civil service act prior to its amendment in 1939, and within the power of the commission to adopt (Act No. 346, §§ 1, 18, Pub. Acts 1937, as amended by Act No. 97, Pub. Acts 1939).

2. STATUTES—PROSPECTIVE OPERATION.

Generally, all statutes are to be treated as prospective in their operation rather than retrospective unless a legislative intent to the contrary clearly appears, either by express provisions or by necessary implication.

3. CONSTITUTIONAL LAW—VESTED RIGHTS.

Vested rights may not be impaired by legislative action.

4. SAME—CLASSIFIED CIVIL SERVICE—VESTED RIGHTS.

Under the civil service law as originally passed, inspectors for public service commission had no vested right to remain in the classified service of the State (Act No. 346, § 1, Pub. Acts 1937).

5. SAME—VESTED RIGHTS.

A vested right is one so fixed that it is not dependent on any future act, contingency, or decision to make it more secure.

6. OFFICERS—VACATION WITH PAY.

A vacation with pay is not a gratuity but rather compensation for services rendered.

7. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACT—COMPENSATION FOR SERVICES RENDERED.

After services are rendered under a law which fixes the rate of compensation, an implied contract arises to pay for them at that rate and the contract cannot be impaired by subsequent legislation.

8. SAME—CIVIL SERVICE—UNUSED VACATION ALLOWANCE—VESTED
RIGHT—AMENDATORY STATUTE.

Under civil service commission rule providing that vacations
with pay be given employees in the classified civil service and
that any employee who is separated from the service with
leave untaken should be compensated for unused portion of
leave allowance, inspectors employed by public utilities com-
mission and its successor, the public service commission, during
1938 and until about June 1, 1939, when they were discharged,
had a vested right to compensation for unused portion of
their leave allowance on May 15, 1939, when amendment re-
moving positions from classified civil service became effective
(Act No. 346, § 18, Pub. Acts 1937, as amended by Act No.
97, Pub. Acts 1939).

9. COSTS—PUBLIC QUESTION—CIVIL SERVICE—UNUSED VACATION AL-
LOWANCE.

No costs are allowed in case involving construction of civil serv-
ice act and amendment thereof relative to compensation for
unused portion of vacation with pay allowance, a matter of
public interest being involved (Act No. 346, Pub. Acts 1937,
as amended by Act No. 97, Pub. Acts 1939).

BOYLES, NORTH, and WIEST, JJ., dissenting.

Appeal from Court of Claims; Carr (Leland W.),
J., presiding. Submitted October 24, 1940. (Docket
No. 95, Calendar No. 41,219.) Decided February 7,
1941.

Separate petitions by Ernest Ramey and Frank
C. Barnhardt to compel Michigan Public Service
Commission to grant them vacation pay. Claim de-
nied. Petitioners appeal. Reversed.

*Thaddeus M. Machrowicz (Joseph Zwerdling,* of
counsel), for petitioners.

*Thomas Read,* Attorney General, *Edmund E.
Shepherd* and *Kenneth G. Prettie,* Assistants At-
torney General, for Michigan Public Service Com-
mission.

BOYLES, J. (*dissenting*).    Plaintiffs were employed as inspectors by the Michigan public utilities commission and its successor, the Michigan public service commission, during all of the year 1938 and until about June 1, 1939, at which time they were discharged. They filed claims with the State court of claims for additional or vacation pay under rule No. 17 of the Michigan civil service commission. Their cases, being similar, were consolidated by the court of claims and come to this court as such, on appeal.

The court of claims, in deciding the matter, had recourse only to existing statutes and regulations. The act creating the court of claims (Act No. 135, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 13862-1 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 27.3548 *et seq.*]) provides:

"SEC. 24.    This act shall in no manner be construed as enlarging the present liabilities of the State and any of its departments, commissions, boards, institutions, arms or agencies."

The authority of the commission to adopt rule No. 17 is found in section 18 of the original act (Act No. 346, Pub. Acts 1937) prior to the 1939 amendment*:

"SEC. 18.    Hours of service; vacations; sick leave.

"(1) The commission shall provide by regulation for the hours and conditions of service, for the length and period of vacations and for the regulation of sick leave in the State service."

Under this authority, the commission adopted rule No. 17 conceded to be in effect until May 15, 1939, and in effect at the time of plaintiffs' discharge about

---

* Act No. 97, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 402-1 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 3.951 *et seq.*).—REPORTER.

June 1st, unless changed by subsequent amendment of the act or subsequent change in the rule. That part of the rule material to this issue reads as follows:

"17.3  Allowances for Annual Leave.

"Each continuing full-time employee in the *classified* service shall be entitled to annual leave with pay in the amount of twelve working days in each calendar year, or one such day for each completed month of service from the date of appointment * * *

"17.4  Grants of Annual Leave.

"Employees may utilize their allowances of annual leave on the basis of applications therefor approved by their respective appointing authorities and the director, at such time or times as they prefer, subject always to the superior right of the appointing authorities to plan the work under their control and to authorize absences only at such times as the employees can best be spared. But any employee may absent himself, without penalty, at such time as is necessary to prevent expiration of any unused portion of his annual leave allowance that is about to expire. Any unused portion of the allowance of annual leave for any calendar year shall so expire at the end of the next succeeding calendar year, except that an extension of six months may be allowed upon certification that the appointing authority was unable to allow time off for leave privileges on account of the exigencies of the public service, inability to replace employees, insufficient funds or such other reason as is satisfactory to the director. Any employee who is separated from the State service shall be entitled to pay for any unused portion of his annual leave allowance of the next preceding year and of the current year to the date of separation."

It is important to note that under the provisions of section 17.3 only those employees who were in the *classified* service were entitled to the annual leave

with pay.   Section 17.4, in providing the manner in which employees may "utilize their allowances of annual leave," obviously refers to the "annual leave with pay" of employees in the *classified* service as referred to in the preceding section of the rule.

Plaintiffs, at the time of their employment, were in the classified service.   Their situation in that respect remained unchanged up to May 15, 1939.   Effective on that date, the civil service act was amended by Act No. 97, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 402-1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 3.951 *et seq.*), by virtue of which plaintiffs' positions were removed from the classified to the unclassified service; and, by the same amendment, unclassified employees were removed from any further jurisdiction of the civil service commission. Provision was made for granting of vacations to *classified* employees as follows:

"SEC. 18.   Leaves of absence; resignations; hours of service; vacations; sick leave. * * *

" (3) The director, after the approval of the commission, shall provide by regulation for the hours and conditions of service, for the length and period of vacations and for the regulation of sick leave in the State service."

In pursuance thereof, the commission adopted new rules providing allowances for annual leave. However, these rules apply only to employees in the *classified* service and plaintiffs herein did not come within their provisions subsequent to the effective date of the amendment of May 15, 1939.

It is conceded that plaintiffs did not avail themselves of the right of vacation with pay prior to May 15, 1939, or, in fact, prior to their discharge about June 1, 1939.   It is also conceded that plaintiffs would be entitled to vacation allowance for 17 working days, if plaintiffs are entitled to any relief under

these circumstances, and the amount is not in dispute. The State claims that on May 15, 1939, plaintiffs lost whatever rights they might have had to vacation with pay. Plaintiffs claim that Act No. 97, Pub. Acts 1939, if given the construction claimed by the State, would deprive them of vested rights; that on May 15, 1939, they had a vested right to additional compensation for 17 working days by reason of not having taken a vacation with pay.

It is not necessary to a decision, to determine whether the adoption of rule No. 17 was within the scope of the powers conferred upon the commission. Plaintiffs do not claim vacation pay for any period subsequent to May 15, 1939, nor do they deny that they were removed from the classified service at that time. The sole issue seems to be whether plaintiffs had on May 15, 1939, and, therefore, at the time of their discharge about June 1st, a vested right to compensation for 17 working days by reason of not having taken a vacation up until that time. In other words, was plaintiffs' unused annual leave allowance a vested right, of which they could not be deprived by legislation?

The compensation of plaintiffs was fixed upon an annual basis and payable semimonthly by the State, the same as other State officers, appointees and employees. It is conceded that plaintiffs had received the full amount of their compensation up to May 15, 1939, and, in fact, up to the time of their discharge about June 1st. Plaintiffs did not avail themselves of any right to take a vacation with pay and it is conceded that plaintiffs have received full pay for the entire period of their service, unless they are entitled to additional pay by reason of having failed to take their vacations. Under plaintiffs' contention, they would be allowed two days' pay for each of 17 working days prior to May 15th, because they

have already received their full pay for every day of their employment. We hold that it was not the intent of the rule to give plaintiffs the option of taking a vacation with pay, or of taking double pay in lieu of a vacation. The right which plaintiffs had, prior to May 15th, was to take a vacation without deduction from pay. This is substantially different from their claimed right to an accumulated double pay for 17 days in lieu of the vacation which they did not use. Rule No. 17 was not intended to increase the amount of compensation a classified employee might claim for his yearly or monthly wage. By the act effective May 15, 1939, the legislature eliminated the regulation on which plaintiffs now rely, so far as it applied to them. On that date, plaintiffs' right to vacation with pay was terminated by the act (Act No. 97, Pub. Acts 1939, *supra*). The legislature took away any arbitrary right they might have previously exercised to take a vacation with pay. At the time of plaintiffs' discharge, they were not entitled to the benefit of rule No. 17. As to them, it had been repealed.

Plaintiffs did not have a vested right to a vacation with pay, or to any compensation by reason of their failure to take a vacation with pay prior to May 15th. It is conceded that on May 15, 1939, plaintiffs had an expectation of future benefit founded upon an anticipated continuance of the existing law and the rules of the commission. However, "A right cannot be regarded as vested, in the constitutional sense, unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws. "The distinction between statutory privileges and vested rights must be borne in mind, for the citizen has no vested rights in statu-

tory privileges and exemptions.'' 11 Am. Jur. § 370, pp. 1199, 1200.

In *Dodge* v. *Board of Education*, 302 U. S. 74 (58 Sup. Ct. 98, 82 L. Ed. 57), the plaintiffs challenged an act of Illinois which they asserted impaired the obligation of contracts in contravention of the Constitution of the United States by depriving them of a vested right without due process. The act decreased the amounts of annuity payments to retired teachers in the public schools of Chicago. The fund and the benefit payments thereunder had been in existence over 40 years when this case was decided. Retired teachers had been receiving these benefits for many years. The new law made substantial reductions in payments to those who had been retired under its provisions. The claimants urged that their rights had become vested, that the law constituted an offer which they had accepted by remaining in service, and that the obligation had become a contract. The court held that it was not a vested right, and that the legislature might reduce the payments.

''The right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder.'' *City of Dallas* v. *Trammell*, 129 Tex. 150, 158 (101 S. W. [2d] 1009, 112 A. L. R. 997; and annotation at 1009).

See, also, *People, ex rel. Donovan,* v. *Retirement Board P. A. & B. F.*, 326 Ill. 579 (158 N. E. 220, 54 A. L. R. 940; and annotation at 943); *State, ex rel.*

*Holton,* v. *City of Tampa,* 119 Fla. 556 (159 South. 292, 98 A. L. R. 501) ; *People, ex rel. Perrine,* v. *Connolly,* 217 N. Y. 570 (112 N. E. 579).

In 1933, the supreme court of Washington had before it a case decidedly in point. The question there involved was the right to take a vacation with pay. As in the case at bar, the Washington law provided for 14 days' leave of absence and not, as claimed by plaintiffs herein, "pay for an unused portion of leave allowance." The court squarely held that a State employee not taking a vacation prior to the time his employment ceased was not entitled thereafter to payment of his salary for such period. The court held that the purpose of the statute was to give the employee a vacation on pay, and not the right to payment for a vacation period after the expiration of the employment. In construing the statute, the court said:

"It is the relator's contention that, since he did not take a vacation during the twelve months prior to the time that his connection with the office of the State auditor ceased, he was entitled to such vacation period after the severance of his connection with that office. * * *

"A gratuity, extra compensation or a bonus, whatever it may be called, cannot be paid to an employee of the State, in addition to his regular salary, after the service has been rendered. * * *

"It is our conclusion on this branch of the case that, when the relator's service was terminated, his right to a vacation ceased, and he no longer had a right to compensation for a vacation period which he did not take during the time of his employment." *State, ex rel. Bonsall,* v. *Case,* 172 Wash. 243 (19 Pac. [2d] 927).

In the case at bar, plaintiffs confuse the right to take a vacation with pay during employment with the claimed right to additional pay in lieu of vaca-

tion after plaintiffs have received their full compensation for the term of their employment. Plaintiffs do not now have the right to elect which course to pursue. If they took a vacation with pay during their employment, they were required to adjust the time of vacation with the requirements of their work. If plaintiffs' position were tenable, the estate of a deceased employee could under similar circumstances hold the State for additional compensation although it would be absurd to say that the "estate" could take a vacation with pay. Conceding that the commission had full authority to promulgate rule No. 17 does not prevent the legislature from changing the law and *ipso facto* the regulation. This would not be retroactive legislation unless plaintiffs on May 15, 1939, had a vested right to additional pay in lieu of taking a vacation. If this were an instance of salary or compensation earned (*State, ex rel. Thomas,* v. *Hoss,* 143 Ore. 41 [21 Pac. (2d) 234]), we might hold that it had become a vested right. However, such is not the case. If plaintiffs did not have on May 15, 1939, a vested right to the additional compensation now claimed by them, the inhibition against retroactive legislation does not apply. The language of this court necessary to the decision in *Wylie* v. *City Commission of the City of Grand Rapids,* 293 Mich. 571, is particularly appropriate to the case at bar:

"Plaintiffs' rights arose from an act of the legislature and their rights to refunds depended upon the anticipated continuance of the law. To say that the legislature could not revoke what it could give would turn a gratuity into a contract and raise rights higher than their source."

Plaintiffs, having received their full compensation for the entire period of their employment, are not now entitled to any additional pay because of

their failure to exercise their right to take a vacation with pay during their employment.

Judgment of the court of claims should be affirmed. This being a question of public interest, no costs are allowed.

NORTH and WIEST, JJ., concurred with BOYLES, J.

SHARPE, J. I am not in accord with the opinion of Mr. Justice BOYLES. The facts stated are correct except that plaintiffs did not file claims for *additional* vacation pay. The plaintiffs did not receive any vacation pay whatsoever.

Under the rules in force during the time plaintiffs earned their *vacation with pay,* they had two alternatives in regard to their annual leave allowances. They could take a vacation with pay each year for a period of two weeks or they could forego a vacation one year and take four weeks vacation with pay the following year. To protect this second alternative it was provided that should any employee be separated from State service, with leave untaken, he would be compensated for the unused portion of his annual leave allowance.

It is the claim of the State that plaintiffs had no vested rights to compensation for unused leave allowances on May 15, 1939. Plaintiffs urge that the civil service commission had power and authority to adopt Rule No. 17 under Act No. 346, Pub. Acts 1937, and that Act No. 97, Pub. Acts 1939, under which plaintiffs' positions were unclassified, operated prospectively only and cannot affect plaintiffs' rights to compensation for the unused leave allowances accumulated by them prior to the effective date of said act.

Rule No. 17, as adopted by the commission, providing for annual leave with pay for all employees

in the classified service, is recognized as sound personnel practice and comes within the general policy of the act which provides:

"Sec. 1. The purpose of this act is to guarantee to all citizens a fair and equal opportunity for public service; to establish conditions of service which will attract officers and employees of character and capacity and to increase the efficiency of the governmental departments and agencies by the improvement of methods of personnel administration."

The adoption of this rule was within the power of the civil service commission under Act No. 346, Pub. Acts 1937.

Act No. 97, Pub. Acts 1939, which had the effect of removing plaintiffs' positions from the classified service to the unclassified service and which removed unclassified employees from the jurisdiction of the commission, contains no express provisions giving the act a retrospective effect. It is the general rule that all statutes are to be treated as prospective in their operation rather than retrospective unless a legislative intent to the contrary clearly appears, either by express provisions or by necessary implication.

In *Detroit Trust Co.* v. *City of Detroit*, 269 Mich. 81, 84, we said:

"We think it is settled as a general rule in this State, as well as in other jurisdictions, that all statutes are prospective in their operation excepting in such cases as the contrary clearly appears from the context of the statute itself. * * *

" 'A construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention.' Endlich, Interpretation of Statutes, p. 362, § 271.

" 'Nevertheless, legislation of this character is exceedingly liable to abuse; and it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively,' 2 Cooley's Constitutional Limitations (8th Ed.), p. 772."

See, also, *Harrison* v. *Metz,* 17 Mich. 377; *Shaw* v. *Morley,* 89 Mich. 313; *Davis* v. *Railroad Co.,* 147 Mich. 479.

It is conceded that vested rights may not be impaired by legislative action; and that plaintiffs had no vested right to remain in the classified service of the State. In my opinion plaintiffs had a vested right to compensation for the unused leave allowances at the effective date of amended civil service commission act (Act No. 97, Pub. Acts 1939).

In *Wylie* v. *City Commission of the City of Grand Rapids,* 293 Mich. 571, 587, we said:

"A few courts have frankly recognized that policy considerations, rather than definitions, are controlling, and have defined a vested right as a right of which the individual could not be deprived without injustice.

" 'In its application as a shield of protection, the term "vested rights" is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a vested *interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived without injustice.*' 2 Cooley's Constitutional Limitations (8th Ed.), p. 745. * * *

" 'A "vested right," as that term is used in relation to constitutional guaranties, implied an interest "which it is proper for the State to recognize and protect, and of which the individual could not be deprived arbitrarily without injustice," ' *City of Los Angeles* v. *Oliver,* 102 Cal. App. 299, 310 (283 Pac. 298). * * *

" 'Now, what is a vested right? Without reference to a dictionary definition, we would define it as a right, so fixed that it is not dependent on any future act, contingency, or decision to make it more secure.' *Kennedy Coal Corp.* v. *Buckhorn Coal Corp.,* 140 Va. 37, 45 (124 S. E. 482)."

Under the facts in this case, plaintiffs had performed all acts necessary to insure to themselves the right of a vacation with pay, or if dismissed before exercised, to receive compensation for the unused

portion of their annual leave allowances. There was nothing remaining for them to do except exercise the right which depended on no contingency, but was complete and matured. In my opinion, vacation with pay is not a gratuity; it is compensation for services rendered. It is a rule that after the services are rendered under a law which fixes the rate of compensation, there arises an implied contract to pay for those services at that rate and the contract cannot be impaired by subsequent legislation. *Fisk* v. *Jefferson Police Jury,* 116 U. S. 131 (6 Sup. Ct. 329, 29 L. Ed. 587) ; *Robertson* v. *Miller,* 276 U. S. 174 (48 Sup. Ct. 266, 72 L. Ed. 517).

In *State, ex rel. Thomas,* v. *Hoss,* 143 Ore. 41, 47 (21 Pac. [2d] 234), it is said:

"It is settled that after a salary has been earned the public employee's right thereto becomes vested and cannot be taken away by any legislation thereafter enacted."

My Brother quotes at length from *State, ex rel. Bonsall,* v. *Case,* 172 Wash. 243 (19 Pac. [2d] 927). This case is not a parallel case with the one at bar. In that case there was no provision that if the employee was discharged he would be entitled to pay for any unused portion of his annual leave allowance. In the case at bar there is such a provision.

The rights upon which plaintiffs base their claims accrued prior to the amendment of the civil service statute; and its change did not affect plaintiffs' rights which had become vested. Moreover, Rule No. 17 of the rules and regulations of the Michigan civil service commission adopted by the commission under Act No. 346, Pub. Acts 1937, provides as follows:

"Each continuing full-time employee in the classified service shall be entitled to annual leave with pay in the amount of twelve working days in each

calendar year, or one such day for each completed month of service from the date of appointment until the end of the current year. * * *

"*Any employee who is separated from the State service shall be entitled to pay for any unused portion of his annual leave allowance of the next preceding year and the current year to the date of separation.*"

The judgment is reversed and a judgment will be entered in favor of each plaintiff for compensation for the unused leave days. No costs will be allowed as a matter of public interest is involved.

BUSHNELL, CHANDLER, MCALLISTER, and BUTZEL, JJ., concurred with SHARPE, C. J.