[No. 26015.   Department One.   April 13, 1936.]

C. M. Scherer, *Appellant*, v. Alaska Shamrock
Marble Company *et al., Respondents.*[1]

*B. G. Skulason, J. Kenneth Kaseberg,* and *E. D.
Germain,* for appellant.

*Fred M. Bond,* for respondents.

Tolman, J.—Appellant, as plaintiff, brought this
action as a minority stockholder in the defendant cor-
poration, on behalf of herself and all others similarly
situated, seeking to enforce, on behalf of the corpora-
tion, a note payable to it in the sum of twenty-five
thousand dollars made by the respondent Thos. C.
Bloomer. It was alleged in the complaint that Bloomer
was the president of the corporation (an Oregon cor-
poration) ; that he and his wife constituted a majority

[1]Reported in 56 P. (2d) 684.

of its board of trustees or directors, and, in addition, that the Bloomers held an exact one-half of the capital stock of the corporation, so that a new and different board could not be elected.

Several defenses were pleaded, among them being one to the effect that the plaintiff was not a stockholder in the corporation, had no interest in the subject matter of the suit, and therefore had no right to maintain the action.

The trial court evidently found that the plaintiff was not a stockholder in the defendant corporation and entered judgment dismissing the action, from which judgment the plaintiff has appealed.

The defendant corporation had issued and there were outstanding 75,000 shares of its capital stock. Without detailing the various transactions and transfers, it is sufficient to say that, in the year 1928, the Bloomers, husband and wife, were the owners of 37,500 shares of this stock, and one Dr. Skiff and the appellant together owned the remaining 37,500 shares. It was then contemplated that eventually the holding of Skiff and the appellant should be equal in amount, but, apparently, at that time only one share of stock stood in the name of Dr. Skiff because he had not fully paid for his one-fourth interest which he was purchasing from the appellant.

Dr. Skiff died in 1929, and after his death there was found in his safety deposit box, to which the appellant had no access, a certificate for 18,749 shares of this stock which had been issued to the appellant and had been endorsed by her in blank. This stock passed into the hands of the personal representative of Dr. Skiff, passed through the probate of his estate, and was set aside to his widow. She afterwards died, and in the course of the probate of her estate this

stock was sold under order of the court, the respondent Bloomer being the purchaser at such sale.

The appellant took no action whatever to recover this stock after the death of Dr. Skiff, and even though we assume that the orders and judgments entered in the two Skiff probate proceedings were not binding on the appellant because she was not a party thereto, yet, under all of the facts and circumstances disclosed by the record, we cannot assume that, if appellant had an enforcible title to the stock, she would have stood silently by while the probate court undertook to dispose of it. We are compelled to find, as did the trial court, that the appellant has failed to establish title in herself to the stock represented by the certificate held by Dr. Skiff.

Outside of the so-called Skiff stock, which we have just discussed, the appellant was the record owner of 18,750 shares of the capital stock of the corporation in her own right. In June, 1933, one having an unsatisfied judgment against the appellant began a garnishment proceeding against the corporation, seeking thereby to reach the stock owned by the appellant. The writ was served upon the appellant as secretary of the corporation, and she, on June 26, 1933, answered the writ as follows:

"The Alaska Shamrock Marble Company is a dissolved corporation, having been dissolved by proclamation of the governor of the state of Oregon, January, 1932.                    CAROLINE M. SCHERER,
            Former Secretary of Alaska Shamrock
            Marble Company."

It does not appear that any action was taken based upon that answer. On August 31 following, another like writ of garnishment was issued and served upon T. C. Bloomer as president of the corporation. On September 1, 1933, Bloomer, as president, filed the

answer of the corporation to the writ of garnishment which disclosed that the appellant was the owner of 18,750 shares of the capital stock of the corporation. Thereafter, in due and regular course, a judicial sale was had, and the appellant's stock, as disclosed by the answer to the writ of garnishment, was sold to the judgment creditor.

The appellant attacks the validity of this proceeding because the writ of garnishment was not served on the Oregon corporation commissioner, as required or permitted by the Oregon statute, 2 Oregon Code, 1930, § 25-221, from which we quote:

"All corporations that expire by limitation specified in their articles of incorporation, or are or have been dissolved by virtue of the provisions of section 25-223, [Oregon Code] or are or have been annulled by forfeiture or other cause by the judgment of a court, or are or have been dissolved by proclamation of the governor, as by law provided, continue to exist as bodies corporate for a period of five years thereafter, if necessary for the purpose of prosecuting or defending any actions, suits or proceedings by or against them, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their corporate business. . . .
"In any such action, suit or proceeding instituted during said five-year period following such dissolution, summons may be served upon such corporation by delivery to the corporation commissioner, by registered mail, or otherwise, . . ."

It seems to be conceded that the corporation here involved was, under the Oregon law, a dissolved corporation at and before the time the writ of garnishment was served, but, even so, the supreme court of Oregon in the case of *Dixie Meadows Independence Mines Co. v. Kight,* 150 Ore. 395, 45 P. (2d) 909, in discussing the statute from which we have quoted and

in construing it in connection with the Oregon statutes providing for personal service on corporations, held that one might proceed under either statute, saying:

"The plaintiff, in the original suit, could have served the summons in accordance with either of the statutes above mentioned. They are cumulative."

The construction of the Oregon statute by the Oregon court is conclusive. It follows that the appellant was not a stockholder and was not entitled to maintain the action.

The judgment is affirmed.

MILLARD, C. J., MITCHELL, STEINERT, and GERAGHTY, JJ., concur.